
Exhibit C



**MGM ELITE**

T R U C K I N G

# MGM Elite Trucking LLC Participant Agreement

# I. Overview

The following explains how the associated trucking organizations work to bring partners revenue for participating.

**A. The Parties:** _Plant Great Seeds LLC_ (Participant), and MGM Elite Trucking ("MGM" and when including its partners, agents, and the like "MGM Network"): an elite, high-touch concierge & brokerage business that provides all trucking, leasing, logistic, compliance, and any and all necessary services regarding participant's truck(s).

**B. How it works:** Participant, through his or her company, can partake in the trucking business operations of MGM, *who, with and through their agents, partners, and the like* (collectively "MGM Network"), provide all aspects of trucking on behalf of and for the benefit of Participant.

**C. Executive Summary:** *How does a Participant buy a truck? What is the Participant Funding? Who is running the business?*

1. Leveraging Mass Buying Power: Participant sends Participant's Participation Fee (PPF) to MGM agents/partners who source and buy vast multitudes of trucks in cash at a tremendous discount leveraging economies of scale which are enjoyed by Participant.

2. Down Payment Funding: A portion of the PPF funds the down payment of Participant's truck(s).

3. PPF Funds All Operations & Requirements: The Remainder of PPF is used to fund all required elements of the truck used in shipping outlined below.

4. **MGM Handles EVERYTHING**: MGM agents/partners take care of all operations, compliance, maintenance, and insurance for the truck(s).

   a. **Finding & Signing Shipping Contracts**: MGM agents/partners book carrier shipments for the trucks, which generate revenue.

   b. **Everyone Gets PAID**: The revenue funds the lease payments, the truck and trucker costs, and revenue back to the Participant.

# II. Participant Agreement

WHEREAS, MGM Elite Trucking LLC is engaged in assisting with trucking PPFs (Participant's Participation Fee) and concierge services; and WHEREAS, Participant wishes to engage MGM Elite Trucking LLC to perform the Services as defined, directly, or through and with its network of agents, partners, and the like, included but not limited to herein; NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

This agreement outlines the services provided by MGM Elite Trucking LLC ("MGM" and "MGM Network") and the responsibilities of MGM and the Participant in managing trucking PPFs either directly or through and by their partners, agents, assigns, joint-venturers, and the like, including but not limited to AKL Transport LLC and Southern Truck Leasing LLC, which Participant hereby agrees to be a customer of.

A. **Responsibilities**:

1. **Participant**:
   a. Provide the formal name of your company (LLC, S-Corp, C-Corp, Partnership, or other formal entity).
   b. EIN / Business Tax I.D.
   c. Corporate Bank Account
   d. Participation Payment for acquisition of truck



Lessee's Initial _____   Owner's Initial _____

**2. MGM**

    a. <u>Operations</u>: Handle all elements of the trucking coordination, payments, liabilities, insurances and compliance – through their network of partners and agents including but not limited to: AKL Transport LLC and Southern Truck Leasing LLC.

    b. <u>Financials</u>: Ensure that truck leases are paid, Participant receives his/her revenue share, any required contractors are paid, and any and all associated ordinary and necessary business fees are paid and settled.

    c. Participant engages MGM Elite Trucking LLC to provide the following services:

        i. <u>Money Transfers</u>: Receiving money transfer through secure transaction of the $ 22,000 one-time PPF (per truck) for the truck lease with Southern Trucking.

        ii. <u>Contracts</u>: Issuing Contracts with assigned VIN numbers within 3 to 5 business days.

        iii. <u>Participant Payments</u>: Issuing automated payments of Net Income to Participant on a weekly basis of $ 1,250 per truck to begin weekly starting 7 to 9 weeks from initial payment of PPF.

        iv. <u>Leasing</u>: Handling the responsibility for weekly lease payment of $700 per truck to Southern Truck Leasing LLC under the Lease Agreement. This payment will be settled promptly upon receipt of payment from AKL Transport to MGM Elite Trucking LLC to ensure Participant's truck is fully compliant with all lease payments and faces no dangers of automatic shutoff of the rig.

        v. <u>Tax Document Compliance</u>: Issue 1099 Forms per IRS regulations.

**3. MGM Network**: By and through AKL Transport and Southern Truck Leasing and/or other partners, agents, or the like of MGM ("MGM Network"), Responsibilities include:

    a. <u>Leases</u>: Securing lease(s) in Participant's name with assigned VIN# and DOT carrier.

    b. <u>Mechanic</u>: Complete full mechanic checks /inspections and any and all maintenance repairs prior to dispatch.

    c. <u>Insurance</u>: Maintaining full insurance, and all liabilities associated with the truck(s).

    d. <u>DOT Document Compliance</u>: Obtain proper documentation for DOT/tags/door stickers/registration for the truck.

    e. <u>DOT Inspection Compliance</u>: Handle all DOT inspections and requirements.

    f. <u>Drivers</u>: Recruitment of drivers.

Lessee's Initial [JG]    Owner's Initial [SM]

Docusign Envelope ID: 140EA5DC-4F27-42C3-9F48-C294D27E66B7

g. <u>Dispatch</u>: Dispatch of Participant's truck through Central dispatch.

h. <u>Expenses</u>: Payment of all expenses, including but not limited to maintenance, insurance, driver compensation, tolls, fuel, fuel tax, dispatch percentage.

i. <u>Delivery Fees</u>: Pay the truck Delivery Fee.

j. <u>GPS</u>: Apply and utilize GPS System/tracking of all trucks nationwide.

k. <u>Driver Compliance</u>: Handling all compliance and digital driver logs for DOT compliance for Driver safety.

l. **<u>AKL Transport Rider: Binding with AKL Transport & Southern Truck Leasing</u>:** AKL Transport to provide and be responsible for:

   i. <u>Driver Oversight:</u> Oversight and management of drivers and truck maintenance.

   ii. <u>Insurance</u>: Insurance coverage for truck, freight, and drivers, and any and all damages related thereto, including but not limited to major capital repairs and replacement of engine, transmission, and/or other mechanical elements. For damages to the truck, in the occurrence of major damages, accident, or theft, Southern Truck Leasing will provide MGM Elite Trucking LLC with the reassignment of VIN # and a new contract will be provided to the Participant at no expense to ensure uninterrupted business.

   iii. <u>Maintenance</u>: Any and all maintenance-related expenses shall be paid by the gross amount produced by the truck's monthly performance and is NOT taken out of the weekly payment of $ 1,250 MGM Elite Trucking ensures that AKL Transport trucks are equipped with the necessary warranty and coverage to maintain compliance with leases and remain operational on the road. Trucks are big rig sleeper cabs that either haul a dry box or flatbed coast to coast, north to south in the Continental US.



Lessee's Initial __JG__    Owner's Initial __SM__

**B. Lease Details:**

1. **Payee: AKL Transport**.

2. **Participant Binder:** Participant agrees to be bound to payments and requirements as a lessee to Southern Truck Leasing, LLC.

3. **Term:** The lease Term  Agreement will remain in effect for an initial term of 5 years ("Initial Term"). The 5-year term is the Initial Term to benefit the capital lease deduction/write off.

4. **Financials**:
   a. <u>Down Payment</u>: $8,000 from Participant's Participation Fee (PPF) is applied toward lease with Southern Truck Leasing.
   b. <u>Balloon</u>: The Lease includes a balloon buyout of $5,600.00.
   c. <u>Total Lease Payments</u>: The lease total is $190,000.00 which includes the said 252 payments (5-year lease).
   d. <u>MGM Lease Payment Service</u>: A lease payment of $700.00 is to be made by MGM Elite Trucking to Southern Truck Leasing on a weekly basis on behalf of the Participant.
   e. <u>No Renewal Fees</u>: Participant will not be subject to any renewal fees/additional Participation Funds (PPFs) of any sort or the like to renew the Term. (Lease renewals <u>do not</u> require further PPF money to be paid by the Participant.)
   f. <u>Lease Fee & How Funds are Applied to pay for Operations</u>:

      i. *Lease Fee*: $700/week paid to Southern Truck Leasing by AKL Transport.
      ii. *How funds are applied*: The $700/week lease payment from AKL Transport (equaling $36,400/year) covers all on-going expenses. This $700/week payment is handled by MGM Elite Trucking who receives the funds from ALK Transport and immediately pays Southern Truck Leasing on behalf of the Participant. This ensures that the Participant's truck is fully compliant with all lease payments and faces no dangers of automatic shutoff of the truck.



Lessee's Initial _____ Owner's Initial _____

**C. Termination: The Agreement may be terminated as follows:**

1. <u>For Cause</u>: This Agreement may be terminated by either Party upon the occurrence of any of the following events of default: (a) the insolvency or bankruptcy of either Party, including without limitation, the imposition or the making of any levy, seizure, general assignment for the benefit of creditors, application, or sale for or by any creditor or government agency; (b) breach of any representation or warranty by the non-terminating Party; or (c) breach of any term of this Agreement by the non-terminating Party that remains uncured after thirty (30) days' written notice to the other Party.

2. <u>Without Cause</u>: Participant shall have the right to terminate the Agreement without cause with a written and signed agreement by all parties ("walk away lease").

**D. Truck Trade-Up:**

1. <u>Eligible Every 2 Years</u>: As stated in the Lease Agreement with AKL Transport, every 2 years during the Term the Participant's truck will be traded for a new year and model to eliminate maintenance expenses.

2. <u>MGM as Intermediary</u>: MGM Elite Trucking will act as the intermediary to ensure a smooth transition with no loss of Net Income during the trade-in at the 2 year mark. A new contract and new Vin # will be provided with another 5-year term (per requirement for capital lease write off): this will repeat every 2 years. Each new lease will terminate the prior lease.

3. <u>Balloon Contract</u>: If the Participant elects to purchase the current truck using the balloon payout option at the 5-year term mark, MGM Elite Trucking will provide a contract stating that the Participant is responsible for all duties, liability, maintenance, insurance, drivers, dispatch, and the truck will no longer be run as an PPF by AKL Transport. The Participant will be fully responsible for all matters and handling of the truck.



Lessee's Initial _____ Owner's Initial _____

**E. Representations**:

1. <u>MGM Elite Trucking LLC Representations</u>. MGM Elite Trucking LLC represents and warrants that:

   a. <u>Good Standing</u>: MGM Elite Trucking LLC is a corporation, it is duly organized and validly existing in good standing under the laws of the jurisdiction of its incorporation, duly qualified to do business in each jurisdiction where any Participant truck is, or is to be, located, and has full corporate power and authority to enter into and perform its obligations under this Agreement. The execution, delivery, and performance by MGM Elite Trucking LLC of this Agreement have been duly authorized by all necessary corporate action on the part of MGM Elite Trucking LLC, and are not inconsistent with its Certificate of Incorporation or By-Laws. Additionally, MGM Elite Trucking LLC partners and collaborates with AKL Transport LLC and Southern Truck Leasing LLC.

   b. <u>No Violations; Valid and Binding</u>: The execution, delivery, and performance by MGM Elite Trucking LLC do not violate any law or governmental rule, regulation, or order applicable to the Services or to MGM Elite Trucking LLC, do not and will not contravene any provision, or constitute a default under any indenture, mortgage, contract, or other instrument to which it is bound, and, upon execution and delivery hereof, will constitute a legal, valid, and binding agreement of MGM Elite Trucking LLC, enforceable in accordance with its terms.

2. <u>Participant Commitments and Representations:</u>

   a. <u>Business Entity</u>: Participant warrants that it be a registered corporation, a partnership, or a limited liability company.

   b. <u>EIN</u>: Participant must provide an EIN# and a business bank account.

   c. <u>Truck Payment</u>: Participant is responsible for sending the one-time/life-time PPF of _____ (per truck) to MGM Elite Trucking LLC.

   d. <u>MGM Lease Payment Authorization</u>: Participant authorizes MGM Elite Trucking to receive the $700 a week lease payment (per truck) from AKL Trucking and pay it on the Participant's behalf to Southern Truck Leasing.

   e. <u>Warrants</u>: The Participant represents and warrants that the Participant is duly organized and validly existing in good standing



Lessee's Initial _____ Owner's Initial _____

Docusign Envelope ID: 140EA5DC-4F27-42C3-9F48-C294D27E66B7

under the laws of the jurisdiction of its incorporation, duly qualified to do business in each jurisdiction where it is required to be so qualified, and has full corporate power and authority to enter into and perform its obligations under this Agreement; the execution, delivery, and performance by Participant of this Agreement have been duly authorized by all necessary corporate action on the part of Participant, and are not inconsistent with its Certificate of Incorporation or By-Laws.

**F.  No Violations:** Agreement Valid and Binding: The execution, delivery, and performance by Participant of this Agreement do not violate any law or governmental rule, regulation, or order applicable to Participant, do not and will not contravene any provision, or constitute a default under, any indenture, mortgage, contract, or other instrument to which it is bound, and, upon execution and delivery hereof, will constitute a legal, valid, and binding agreement of Participant, enforceable in accordance with its terms.

**G.  Dispute Resolution**: Having entered into this Agreement in good faith, the Parties agree that if a dispute arises under or relating to this Agreement, such dispute shall be litigated in the state or federal courts located in Sarasota, Florida, USA. Governing Law: Except to the extent that the application of such laws is prohibited by the provisions of 49 U.S.C. § 14501(c) or other law, this Agreement shall be interpreted in accordance with the laws of the State of Florida, disregarding any choice-of-law principle under which that State would look to the laws of another jurisdiction.

**H.  Severability:** To the extent that any provision of this Agreement may be held to be invalid or unenforceable by a court of competent jurisdiction, such provision shall become ineffective as to all matters within the jurisdiction of that court. The court's holding, however, shall not be treated as affecting the validity or enforceability of any other provision of this Agreement, nor as affecting the validity or enforceability of any part of this Agreement in other jurisdictions.

**I.  Entire Agreement; Amendments:** This Agreement represents the entire agreement and understanding of the Parties with regard to its subject matter. No prior understandings or agreements of the Parties, whether written or oral, nor any documents not specifically incorporated into this Agreement, nor any course of conduct of the Parties before or after the Effective Date of this Agreement, shall have the effect of modifying the Parties' rights and obligations under this Agreement in any way. Except with regard to changes in contact information and listings, no amendment to this Agreement shall be valid unless it is set forth in



Lessee's Initial _____   Owner's Initial _____

writing, is marked with a unique amendment number, specifies the articles, sections, and/or attachments being amended, specifies an effective date for the amendments, and is signed by duly authorized signatories for each Party.

**J. Waiver:** Neither the failure of a Party to exercise any right, power, or privilege under this Agreement, nor its delay in any such exercise, shall operate as a waiver of that right, power, or privilege. No such waiver shall be binding on either Party unless it is in writing and signed by a Designated Contact of the Party against which the waiver is asserted. No such waiver on one occasion shall preclude subsequent full enforcement of a Party's rights, powers, and privileges under this Agreement or at law or in equity.

**K. Successors and Assigns:** This Agreement shall be binding on, and shall insure to the benefit of, both parties as well as their respective successors and permitted assigns. Assignment of this Agreement by either Party requires written consent by the other Party. Neither Party shall unreasonably withhold consent for an assignment by the other Party to an affiliate of the assigning Party, provided that the affiliate first agrees in writing to comply with all terms and conditions of this Agreement.

**L. Ambiguities:** Ambiguities, if any, in this Agreement shall not be construed against any Party, irrespective of which Party may be deemed to have authored the ambiguous provision.

**M. Counterparts:** This Agreement may be executed in one or more counterparts, any and all of which shall constitute one and the same.

**N. Captions:** The captions and headings set forth in this Agreement are for convenience only. They shall not be considered a part of this Agreement, nor affect in any way the meaning of its terms and conditions.

**O. Attorneys' Fees:** If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, costs, and necessary disbursements in addition to any other relief to which such party may be entitled.

[Signature page follows.]



Lessee's Initial _____ Owner's Initial _____

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the Effective Date.

MGM Elite Trucking LLC

x. _Sarah Moshier_
     971E5190B3F24B8...

Name/Title

Date: _8/8/2024_

Participant(s):

| x. _Julie Galli_<br>     375778828U9U4F8... | x. _____ |
|---|---|
| Name/Title | Name/Title (if more than one signer) |
| Date: _8/8/2024_ | Date: _____ |

Lessee's Initial _JG_    Owner's Initial _SM_

# Lease Agreement

Date: 8/8/2024

Lease No. 562

## LESSEE:

| | |
|---|---|
| **Business Name** | Plant Great Seeds LLC |
| **EIN Number** | 99-4251587 |
| **Street Address** | 13233 Saw Palm Creek Trail |
| **City, State, Zip** | Lakewood Ranch, FL 34211 |
| **Phone Number – Work** | 508-864-6064 |
| **Email Address** | plantgreatseeds@gmail.com |
| **Name of Signing Officer** | Julie Galli |

## Owner:

| | |
|---|---|
| **Legal Name** | Southern Truck Leasing LLC |
| **EIN** | 92-3529064 |
| **Name & Title of Signing Officer** | Kris Lunsford |
| **Street Address** | 1226 Birdsong View |
| **City, State, Zip** | Dacula, GA 30019 |
| **Phone Number – Work** | 770-722-9755 |
| **Phone Number – Cell** | 770-722-9755 |
| **Email Address** | Kris@southerntruckleasing.com |

## Leased Equipment:

| | |
|---|---|
| **Truck Description** | 2019 International LT625 |
| **VIN #** | 3HSDZAPR2KN093509 |

Lessee's Initial _JG_    Owner's Initial _KL_

Docusign Envelope ID: 140EA5DC-4F27-42C3-9F48-C294D27E66B7

| Mileage | NA |
|---|---|

## Term, Lease & Payments:

| Term | 304 Payments |
|---|---|
| Down Payment | $8,000 |
| Payment Amount | $700.00 |
| Frequency | Weekly on Friday |
| Start Date | Beginning  9/20/2024 |
| Payment Method | Wire, ACH, zelle or square (if available) |
| Number of Remaining Payments | 252 |
| Balloon Buy-Out | $5,600.00 |

**This Equipment Lease Agreement** (collectively, with all exhibits, schedules, amendments, and annexes now or hereafter attached hereto, this "Agreement"), dated as of the date shown above is between the lessee and owner shown above.

This agreement contains specific terms and conditions governing the lease of certain equipment by the owner to the lessee.

Lessee and owner agree that lessee will lease the above-described property (the "equipment") from owner under the terms of this agreement.

1. **TERM**. This agreement shall be effective from and after the date of execution hereof and shall continue until the expiration of the term as set forth above. Lessee acknowledges that it has inspected the equipment and accepts the equipment AS IS WHERE IS.

2. **TRUCK LEASE**. Customers must make their payment on the day specified. The truck will be turned off the following day if payment is not received. Customer has 5 days to make the payment before the truck is picked up. The first time the GPS needs to be turned on will be free, the second time there will be a $100 late charge and every time after that there will be a $200 late charge.

3. **OWNER TERMINATION**. Owner may terminate this agreement and its obligations to lessee hereunder upon (a) a default under the Service Agreement referenced below; (b) the occurrence of an event of default. Customers can turn the truck in at any time if it is in the same working order as they got it.

4. **TRADE UP**. The customer can trade the truck in after 2 years of on time payments for a newer truck with no additional down payment. The truck must be in the same working order it left in.

Lessee's Initial _____ Owner's Initial _____

5. **LOCATION; INSPECTION; USE**. Lessee shall: (a) not remove or cause to be removed the equipment from the lessee's address (as specified in the equipment description) for more than 30 days at a time; (b) not, for any reason or at any time, remove or cause to be removed the equipment from the United States; (c) provide to owner in writing the exact location of any equipment within 3 calendar days of owner's request; (d) upon 24 hours' notice, grant owner or owner's agent access to the equipment, any and all books and records related thereto, and any premises where the equipment or such books and records are stored in a default; (e) not attach or incorporate the equipment to or in any other item of equipment in such a manner that the equipment may be deemed to have become an accession to or a part of such other item of equipment; (f) use and operate the equipment in accordance with all applicable federal, state and city rules, laws and regulations, including without limitation, the rules and regulations of the Federal Highway Administration and the rules and regulations of the state in which the equipment is titled or stored and comply with all licensing requirements in respect of any operator(s) thereof; (g) use and operate the equipment in a careful and proper manner consistent with the purpose for which the equipment was designed, and in accordance with the warranty requirements, instructions and specifications set forth by the manufacturer(s) of the equipment; and (h) not use the equipment for any family, personal or other non- commercial purpose.

6. **MAINTENANCE**. MAINTENANCE WILL BE COVERED IF THE LESSEE IS SIGNED ON WITH A QUALIFIED CARRIER, AKL TRANSPORT LLC OR ITS AFFILIATES. LESSEE ACKNOWLEDGES AND AGREES THAT SATISFACTORY MAINTENANCE OF THE EQUIPMENT IS A CONDITION TO ITS RIGHTS UNDER THIS LEASE AND IT WILL BE IN MATERIAL DEFAULT HEREUNDER IF IT FAILS TO COMPLY WITH THIS SECTION. Lessee shall maintain the equipment in good repair and operating condition, which condition shall, always, be (i) at least the same as the condition of the equipment when delivered to lessee hereunder, except for ordinary wear and tear despite lessee's full compliance with the terms of this agreement and (ii) in all respects be satisfactory to owner in its sole and absolute discretion. Lessee shall, at its sole cost and expense, make any repairs by a provider acceptable to and (except for emergency repairs) approved in advance by the owner. All replacements, accessions, fixtures, substitutions or other parts or equipment installed in or otherwise made a part of the equipment shall, immediately upon installation and without further action by owner or lessee, become part of the equipment.

7. **HAZARDOUS MATERIALS**. Lessee shall not transport hazardous materials (as such term is defined in the Hazardous Materials Transportation Authorization Act of 1994, as amended, 49 U.S.C. 5101 et seq., "Hazardous Materials") in the equipment unless lessee possesses all current and necessary licenses and certifications required by all applicable jurisdictions and authorities in connection with the use, transportation, or handling of Hazardous Materials. Any contemplated use of the equipment for any such transportation must be disclosed to and approved by the owner in writing.

8. **ALTERATIONS**. Lessee may, but shall not be required to, at any time and at its expense, make alterations, additions, or improvements to the equipment (collectively, "Alterations"), provided that (a) Owner ensures that any alteration is undertaken in a manner that minimizes disruption to lessee's business, and (b) owner provides lessee with at least 5 calendar days' notice before commencing any alteration. All replacements, accessions, fixtures, substitutions or other parts or equipment installed in or otherwise made a part of the equipment in connection with any alteration shall, immediately upon installation and without further action or formality by lessor or lessee, become part of the equipment. Nothing in this section shall affect any obligation of the lessee under this agreement.

9. **LOSS AND DAMAGE; STIPULATED VALUE**. Lessee shall bear all risk of loss, theft, destruction, or requisition of or damage to the equipment (each such event, a "Casualty Occurrence"). Lessee shall give owner prompt notice of any casualty occurrence and shall repair the equipment in a manner satisfactory to owner, provided however, that if owner, at its sole discretion, determines

Lessee's Initial ___JG___   Owner's Initial ___kl___

Docusign Envelope ID: 140EA5DC-4F27-42C3-9F48-C294D27E66B7

the equipment is lost, stolen, destroyed, or damaged beyond repair or is requisitioned or suffers a constructive loss under an insurance policy carried.

10. **TAXES**. Lessee shall make payments including sales tax to the owner.  Lessee is responsible for all filings and pays all taxes and other governmental assessments relative to the equipment as required by law. (a) Lessee shall be solely responsible for payment of all sales and use taxes imposed on the possession, use, or operation of the equipment during the term of this agreement. (b) Lessee assumes all responsibility for and shall pay the cost and expense of all licensing, registrations, permits, and such other certificates as may be required for the lawful operation of the equipment during the term of this agreement. (c) Lessee shall observe all safety rules and other requirements of regulatory bodies having jurisdiction over the equipment or over the possession, use, or operation of the equipment, and lessee shall pay all fines assessed in respect of such use, possession, or operation. (d) Lessee may, but shall not be obligated to, pay any tax, licensing, registration, or permit fee, fine, or other charge, whether levied, assessed, charged, or imposed against owner or lessee. If the owner makes any such payment, the lessee shall, within 10 calendar days of being notified of such payment, reimburse the owner for the full amount of such payment. Owner shall have the right of offset in the event owner owes any monies to lessee. Lessee shall pay or reimburse the owner for any taxes and other governmental assessments, other than owner's net income taxes, related to any payments due under or otherwise related to this Agreement.

11. **INSURANCE**. INSURANCE WILL BE COVERED BY THE CARRIER IF THE LESSEE IS SIGNED WITH A QUALIFIED CARRIER, AKL TRANSPORT LLC OR ITS AFFILIATES. Lessee shall maintain all-risk insurance on the equipment ("Casualty Insurance") with policy coverage in an amount not less than the full replacement value of the equipment naming owner as an additional insured and lender loss payee. The Casualty Insurance requires shall, at a minimum, (a) provide breach of warranty coverage, (b) provide for (i) bodily injury liability coverage of not less than $1,000,000 and (ii) property damage coverage of not less than $1,000,000, (c) name Owner as additional insured and lender loss payees, (d) state that the Casualty Insurance coverage is "primary", and (e) require that any modification or cancellation of coverage be made only upon 15 days' written notice to owner. All required insurance must be in form and substance satisfactory to the owner and be underwritten by an insurance company approved by the lessor. Any insurance proceeds shall, at owner's sole discretion, be applied to (a) the repair of the equipment, (b) payment of the Stipulated Loss Value and/or (c) payment of other obligations to owner. Any excess shall belong to the lessee. The lessee appoints the owner as lessee's attorney-in-fact to do all things necessary or advisable to secure payments under any policy contemplated hereby on account of a Casualty Occurrence. Lessee shall cause the owner to receive evidence reasonably requested by the owner of the coverage required above. If the lessee does not provide such insurance, the lessee agrees that the owner has the right, but not the obligation, to obtain such insurance and charge the lessee for all costs. Lessee acknowledges that any such insurance arranged by the lessee will be at a cost more than what lessee might arrange and will insure only owner's interest. Owner may make a profit under any insurance program and lessee's agreement to these terms are in consideration of owner's forbearance from terminating this lease agreement for lessee's default, but any such default shall be immediate and incurable and owner may enforce its rights at any time, including recovering the equipment, terminating this Lease Agreement and ordering the lessee to cease use of the equipment, as the owner waives no such rights by arranging any insurance or any other action or inaction. No action taken by the owner under this section indicates that the owner is in the business of selling or providing insurance.

12. **RETURN OF EQUIPMENT**. (a) Lessee shall within 10 calendar days of the expiration of this agreement or termination due to an event of default, (whichever is first to occur): (i) perform any and all testing and repairs on or to the equipment that renter, in its sole discretion, deems necessary in order to return the equipment to the condition and appearance as when first received by the lessee (except for ordinary wear and tear), (ii) remove all waste material from the equipment and disposes of the same in accordance with all applicable environmental and waste disposal laws and regulations, and (iii) returns the equipment to a location within the continental United States that owner shall specify. Lessee shall further, at its sole cost and expense, procure and maintain a transit insurance policy, in form and substance satisfactory to owner, covering the



Lessee's Initial _____    Owner's Initial _____

period between the termination or expiration of this agreement (whichever is first to occur) and the return of the Equipment to Owner in accordance with clause (iii) of Section 14(a) hereof. Such policy shall provide insurance coverage in an amount not less than the replacement value of the Equipment and name Owner as the loss payee thereunder. (b) Until lessee has fully complied with the requirements of Section 14(a) hereof, lessee's obligations hereunder, including the obligation to pay the lease, shall continue a month-to-month basis notwithstanding any expiration or termination of the term of this agreement that may be otherwise applicable. (c) If the equipment is returned, the lessee shall deliver to the owner all maintenance records at least 14 days, but not more than 30 days, prior to termination of this agreement.

13. **REPRESENTATIONS AND WARRANTIES; COVENANTS OF LESSEE**. Lessee represents and warrants that: (a) lessee and the person(s) signing this agreement on behalf of lessee have all requisite authority and capacity to enter into and perform under this agreement and all other documents executed in connection herewith (collectively, the "lease documents"); (b) Lessee is duly qualified to do business wherever necessary to carry on its present business and operations, including each jurisdiction in which the equipment is or will be located; (c) Each of the lease documents constitutes a valid, legal and binding agreement, enforceable in accordance with its terms, except to the extent such enforceability may be limited under applicable bankruptcy and insolvency laws; (d) no approval, consent or withholding of objections is required from any governmental authority or entity with respect to lessee's entry into or performance under the lease agreement documents except to the extent such approval or consent has already been obtained; (e) Lessee's entry into the lease agreement documents and the performance thereunder will not: (i) violate any judgment, order, law or regulation applicable to Renter or any provision of lessee's certificate of incorporation or bylaws (if applicable); or (ii) result in any breach of, constitute a default under or result in the creation of any Lien (as defined below), charge, security interest or other encumbrance on any equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this agreement) to which lessee is a party; (f) there are no suits or proceedings pending or threatened in any court or before any commission, board or other administrative agency against or affecting lessee, which if decided against the lessee would have a material adverse effect on the ability of lessee to fulfill its obligations under this agreement; (g) each financial statement delivered to owner has been prepared in accordance with generally accepted accounting principles, consistently applied (or applicable statutory accounting principles, as the case may be); (h) since the date of the most recent financial statement, there has been no material adverse change in lessee's financial position; (i) under all applicable laws, the equipment consists solely of personal property; and (j) lessee's legal name is as set forth in the preamble of this agreement and lessee is and will be at all times validly existing and in good standing under the laws of the state of its incorporation or organization in its current form of legal entity. Lessee shall, upon owner's request, execute and deliver to Lessor bills of sale, assignments, certificates of title (listing owner and/or owner's lender as lienholder) or any other document that owner deems necessary to evidence owner's ownership of and title to the equipment.

14. **INDEMNITY**. Lessee hereby agrees to assume liability for, and shall indemnify, protect, save, and hold harmless owner, owner's affiliates, partners, directors, officers, employees, agents, servants, successors and assigns (collectively, "Indemnitee") from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs and expenses, including reasonable legal expenses, of whatsoever kind and nature, imposed on, incurred by or asserted against any Indemnitee, in any way relating to or arising out of this agreement or the enforcement thereof, or the manufacture, purchase, acceptance, rejection, ownership, possession, use, selection, delivery, rental, operation, condition, sale, return or other disposition of the equipment or any part of the equipment (including without limitation, latent or other defects, whether or not discoverable by Renter or any other person, any claim in tort whether or not for strict liability and any claim for patent, trademark, copyright or other intellectual property infringement); provided, however, that lessee shall not be required to indemnify any Indemnitee for loss or liability arising from acts or events which occur after the equipment has been returned to owner in accordance with this agreement, or for loss or liability resulting solely from the willful misconduct or gross



Lessee's Initial ___JG___   Owner's Initial ___kl___

Docusign Envelope ID: 140EA5DC-4F27-42C3-9F48-C294D27E66B7

negligence of any Indemnitee. The provisions of this Section 16 shall survive the expiration or early termination of this lease agreement.

15. **DEFAULT**. IF THE LESSEE SIGNS THE LEASE AGREEMENT BECAUSE OF A TRANSPORT AGREEMENT AND THEY ARE NOT HAPPY WITH THE TRANSPORT COMPANY, THEY CAN TERMINATE THE LEASE AGREEMENT WITHOUT PENALTY. Each of the following shall constitute an event of default hereunder (each an "event of default"): (a) Lessee fails to pay any amount hereunder when due; (b) Lessee fails to perform any other obligation under this agreement or any other agreement between owner and renter, including without limitation any GPS acknowledgement agreement; (c) if lessee is a natural person or sole proprietorship, lessee dies or is declared legally incompetent; (d) lessee makes an assignment for the benefit of creditors, a receiver or trustee is appointed for lessee, a proceeding contemplating winding up of lessee's affairs is instituted, lessee ceases business affairs or lessee makes a transfer of a material portion of its assets; (e) lessee fails to generally pay its debts as they become due, takes action for the purpose of invoking the protection of any bankruptcy or insolvency law, or any such law is invoked against or with respect to lessee or its property; (f) if lessee is not a natural person, effective voting control of the ownership interests in lessee is not retained by the present holders thereof; (g) Lessee merges, dissolves, consolidates, combines, joins or otherwise becomes acquired by another person or entity without the prior written consent of owner; (j) an event described in (c), (d) or (e) occurs as to a guarantor of lessee's obligations hereunder; (i) any certificate, statement, representation, warranty or audit contained herein or furnished with respect to this agreement made or delivered by or on behalf of lessee is false or misleading in any material respect at the time delivered or when deemed restated hereunder; (j) a default or event of default occurs under any lease or mortgage with respect to any real property where the equipment is located; (k) lessee fails to obtain and maintain the casualty insurance; (l) lessee fails to perform or observe any other covenant or to be performed or observed and such failure continues un-remedied for a period of 5 calendar days; (m) lessee makes or causes or suffers to exist any unauthorized Lien on the equipment or makes any assignment or transfer of this agreement, the equipment or any interest therein; (n) any person or entity has or acquires rights in the equipment that are superior to owner's rights, other than as a result of owner's intentional acts; (o) any provision of this agreement ceases, for any reason, to be valid and binding on the lease; and (p) an adverse change occurs with respect to the financial condition or operations of lessee that results in a material impairment of the prospect of payment of lessee's obligations hereunder.

16. **REMEDIES**. Upon the occurrence of any event of default, owner (or its agent(s)) may, at its option, do any or all of the following: (a) accelerate the remaining payments and declare the stipulated loss value to be immediately due and payable; (b) use self-help or any other lawful remedies to take possession of the equipment; (c) require lessee to assemble the equipment at the location to which the equipment was delivered or such other location as owner may designate; (d) enter upon any premises where the equipment is stored; (e) seize and sell or otherwise dispose of the equipment in a commercially reasonable manner and apply the net proceeds of any such disposition to the obligations of lessee hereunder; (f) institute proceedings at law or in equity to recover from lessee all amounts then due and owing under this agreement and/or to compel lessee's performance hereunder; (g) utilize any other remedy available to owner under the uniform commercial code or the internal laws of the state of Florida; and (h) terminate this agreement and any other lease agreement document. Any costs, fees or other charges incurred by the owner in exercising any of the foregoing, including without limitation, costs of removal, freight, demurrage, storage, labor, and attorneys' fees and costs shall be borne solely by the lessee. All the owner's rights and remedies under this section 18 are cumulative and may be exercised concurrently or separately from time to time. Owner's failure to exercise any or all the rights and remedies set forth herein shall not constitute a waiver of any right, remedy, default, or event of default. Any waiver must be expressly stated in writing and signed by an authorized representative of the owner to be effective. Upon any event of default, any amounts due and owing to the owner shall bear interest at a rate of 18.00% per annum or such Owner amount as may be permitted to be assessed under applicable law.



Lessee's Initial _____    Owner's Initial _____

17. **ASSIGNMENT**. (a) Without the prior written consent of owner, lessee shall not assign, transfer or encumber any of its rights or obligations hereunder or its leasehold interest, sublease the equipment or otherwise permit the equipment to be operated or used by, or to come into or remain in the possession of, anyone but the lessee. No assignment or sublease, whether authorized in this Section 19 or in violation of the terms hereof, shall relieve the lessee of its obligations hereunder. Any assignment, transfer, encumbrance, delegation, or sublease made or entered into by lessee in violation of this agreement shall be void and of no effect. (b) Owner may at any time assign any or all its rights, obligations, title, and interests hereunder to any person or entity. If the lessee is given notice of any such assignment, the lessee shall acknowledge receipt thereof in writing. Any such assignee shall have and be entitled to exercise all rights and powers of owner hereunder but shall not be obligated to perform any of owner's obligations hereunder and shall not be subject to any defenses or claims lessee may have against owner. Unless otherwise directed by owner, lessee shall pay all lease payments and other amounts payable by owner hereunder to such assignee, notwithstanding any defense or claim of whatever nature, whether by reason of breach or otherwise that it may now or hereafter have against owner; it being understood that in the event of a default or breach of this agreement by owner, lessee shall pursue any rights on account thereof solely against owner. Lessee acknowledges and agrees that any such assignment shall not constitute a material change to lessee's duties or obligations under this agreement nor materially increase lessee's risk or burdens. (c) Subject to the terms of this Section 19, this agreement shall inure to the benefit of, and is binding upon, the successors and assigns of the parties hereto.

18. **TITLE AND LIENS**. (a) The parties agree that the equipment is and shall remain personal property and that the owner's security interest therein shall not be impaired, notwithstanding the way it may be affixed to any real property. At the owner's request, the lessee shall, at lessee's sole expense, obtain and deliver to owner waivers of any lien, encumbrance, or interest that any person might have or hereafter claim with respect to the equipment. (b) lessee shall not dispose of the equipment except to the extent expressly provided herein. Lessee agrees to maintain the equipment free from all claims, liens, attachments, rights of others and legal processes (collectively, "Liens") of creditors of lessee or any other person, other than (i) the security interest of owner, including all attendant rights, and (ii) any sublease permitted hereunder, if any, the rights of the sub-lessee thereunder. Lessee shall defend, at its sole cost and expense, the owner's title to the equipment from such claims, liens, or legal processes.

19. **NATURE OF THIS AGREEMENT; ENTIRE AGREEMENT**. This agreement is solely a lease agreement. Owner is not affiliated with the manufacturer or vendor of the equipment has not been involved in the selection or purchase of and has made no agreement, representation, or warranty as to the equipment, the terms of this transaction or the tax or accounting treatment of this agreement. The owner disclaims any warranty of merchantability or fitness for use or purpose. This agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and shall not be rescinded, amended, or modified in any manner except by a document in writing executed by both parties. This agreement supersedes any commitment letter, proposal letter or other writing or agreement previously issued or entered into by the owner with respect to the lessee and the equipment. Lessee hereby authorizes owner to make non-material annotations and corrections to this agreement without further consent or comment from lessee, including without limitation, the insertion of equipment identification information and the correction of omissions and clerical errors.

20. **NOTICES; ADDITIONAL DOCUMENTS AND INFORMATION; MISCELLANEOUS**. (a) All notices hereunder shall be effective upon (i) the sending of an email to one of the addresses set forth on the first page of this agreement or (ii) delivery to a recognized overnight delivery service of a properly addressed notice, delivery prepaid, with instructions to make delivery on the next business day. For purposes of this section 22(a), the addresses of the parties are as set forth on the first page of this agreement or may otherwise be specified from time to time in a writing sent by one party to the other in accordance with the provisions hereof. All notices to owner shall be deemed given upon actual receipt by a responsible officer of owner. (b) lessee shall promptly

Lessee's Initial __JG__   Owner's Initial __kl__

Docusign Envelope ID: 140EA5DC-4F27-42C3-9F48-C294D27E66B7

execute and deliver to owner such further documents, instruments and assurances and take such further action as owner from time to time may reasonably request to carry out the intent and purpose of this agreement and to establish and protect the rights and remedies created or intended to be created in favor of owner under this agreement and any other agreement executed in connection herewith. (c) lessee hereby authorizes owner to file all financing statements, fixture filings, continuations, terminations, amendments, or restatements of any certificates of title in respect of the equipment, and any other documents or amendments that owner deems necessary or appropriate to perfect, protect and enforce its security interest in the equipment. Within 30 calendar days of owner's request, lessee shall reimburse the owner for all costs and fees incurred or paid by owner in connection with such filings, including without limitation, lien searches and searches to reflect. (d) lessee hereby appoints owner as lessee's attorney- in-fact (which power shall be deemed coupled with an interest) to file, execute, endorse, and deliver any documents, instruments, checks or drafts relating to or received in payment for any loss or damage under any policy of insurance required under this agreement. (e) lessee shall provide owner with any additional documentation and information as owner may from time reasonably request, including without limitation, owner's bank statements, account records and federal and state income tax returns. Lessee hereby authorizes owner to conduct any background checks, order credit reports, or otherwise any other information from third parties reasonably related to Owner and Renter's business that owner may deem reasonably necessary or advisable. (f) Lessee shall    provide written  notice  to  the owner: promptly upon the occurrence of any default, event of default or event that, with the lapse of time, would become an event of default, (ii) promptly upon lessee becoming aware of any alleged violation of applicable law relating to the equipment or this agreement, and (iii) 30 calendar days prior to any contemplated change in lessee's state of organization (if applicable). (g) For purposes of this agreement, (i) the singular includes the plural, and the plural includes the singular and (ii) the word "owner" includes all assignees of owner. (h) If there is more than one lessee, the liability of all co-renters shall be joint and several. (i) Section titles are not an aid in interpretation. (j) The "equipment cost" shown above may not represent the actual total amount financed by lessee due to vendor discounts, additional costs, or other adjustments. The lessee may contact the owner in writing for further information. (k) A pdf or a facsimile copy of this agreement or a related document may be entered into evidence as an original.

21. **GOVERNING LAW; VENUE**. Each of the rental documents, and the rights and obligations of the parties hereunder and thereunder, shall in all respects be governed by, and construed in accordance with the internal laws of the STATE OF GEORGIA (without regard to its conflict of laws principles), including all matters of construction, validity, and performance, regardless of the location of the equipment. The parties hereto agree that any action or proceeding arising out of or relating to this agreement may be commenced in any state or federal court in Georgia and agree that a summons and complaint commencing an action or proceeding in any such court shall be properly served and shall confer personal jurisdiction if served personally or be certified mail to it at its address as set forth herein, or as it may provide in writing from time to time, or  as otherwise provided under the laws of the State of Georgia. Lessee waives any right it may have to object to such forum and agrees that it may institute any legal action or proceeding against the owner or relating to this agreement only in such forum. Lessee may not bring any action or proceeding against owner, its property or otherwise relating to this Agreement, the Lease documents, or the equipment in the courts of any other jurisdiction.

22. **NO OFFSET; PREPAYMENT**. Lessee's obligation to make all payments under this agreement is absolute and unconditional and shall be payable whether (a) this agreement is terminated by operation of law, (b) the condition or operational state of the equipment, (c) any vendor or third-party service provider has performed. Lessee's payment obligations hereunder shall not be subject to any abatement, counterclaim, recoupment, offset or defense. Anything herein to the contrary notwithstanding, so long as (i) Lessee is not in default hereunder and has breached no agreement with Owner, and (ii) Lessee provides not less than 60 days advance written notice to owner, Lessee may prepay all amounts owed hereunder and remove any security interest or other claim owner may have to the equipment by paying, on the date any payment of the lease is



Lessee's Initial _____ Owner's Initial _____

due, an amount, calculated by owner, to return to owner the unamortized purchase price of the equipment together with all sums owed hereunder, without prepayment premium. Upon the owner's receipt of such payment, this lease agreement will be cancelled. Lease will continue to be responsible for all taxes, indemnities and other obligations that arose during the term of this rental agreement prior to such prepayment.

23. **NO AGENCY**. Owner acknowledges that no supplier, vendor, or manufacturer of the equipment nor any financial intermediary nor any other party is an agent of Owner, and that no such party is authorized to waive or alter any term or condition of this agreement, make any representation as to the equipment or any other matter. In no event shall any such representation, waiver, consent, or amendment be deemed binding upon the owner.

24. **WAIVER OF RIGHT TO JURY TRIAL**. OWNER AND LESSEE EACH ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW. EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OTHER AGREEMENT, DOCUMENT, OR INSTRUMENT BETWEEN THE PARTIES HERETO.

25. **DISCLAIMER**. Lessee acknowledges that it has selected the equipment without any assistance from its owner, its agents, or employees. Owner does not make, has not made, nor will be deemed to make or have made, any warranty or representation, either express or implied, written or oral, with respect to the equipment or any component thereof, including, without limitation, any warranty as to design, compliance with specifications, quality of materials or workmanship, merchantability, fitness for any purpose, use or operation, safety, patent, trademark or copyright infringement, or title. All risks, as between owner and lessee, are to be borne solely by lessee. Without limiting the foregoing, owner shall have no responsibility or liability to lessee or any other person with respect to any of the following: (i) any liability, loss or damage caused or alleged to be caused directly or indirectly by the equipment, any inadequacy, deficiency, or defect (latent or otherwise) of the equipment, or any other circumstance in connection with the equipment; the use, operation or performance of the equipment or any risks relating to it; (iii) any interruption of service, loss of business or anticipated profits or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement or replacement of the equipment. Provided no event of default has occurred and is continuing under this agreement, lessee may, during the term of this agreement and with the prior written consent of the owner, assert and enforce whatever claims and rights owner may have against any supplier, vendor, or manufacturer of the equipment at lessee's sole cost and expense, in the name of and for the account of owner and/or lessee.

26. **USURY SAVINGS**. The parties intend to comply with any applicable usury laws to the extent that the agreement or any other lease document is determined to be subject to such laws. Accordingly, the parties hereto agree that, notwithstanding any provision to the contrary, in no event shall any lease document require the payment of or permit the collection of interest more than the maximum amount permitted by any applicable law. If any such excess interest is contracted for, charged or received under any lease document, or if all of the principal balance is prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under any lease document will exceed the maximum amount of interest permitted by any applicable law, then in such event: (i) the provisions of this paragraph shall govern and control; (ii) neither lessee nor any other person or entity now or hereafter liable for the payment thereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by any applicable law; (iii) any such excess which may have been collected will be either applied as a credit against the then unpaid principal balance or refunded to lessor, at the option of owner; and (iv) the effective rate of interest shall be



Lessee's Initial _____  Owner's Initial _____

Docusign Envelope ID: 140EA5DC-4F27-42C3-9F48-C294D27E66B7

automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof. It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under any lease document that are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness evidenced by this agreement, all interest at any time contracted for, charged or received from lessee or otherwise by owner in connection with such indebtedness; provided, however, that if any applicable state law is amended or if the federal law preempts any applicable state law, so that it becomes lawful for owner to receive a greater interest per annum rate than is presently allowed, lessee agrees that, on the effective date of such amendment or preemption, as the case may be, the lawful maximum under this agreement shall be increased to the maximum interest per annum rate allowed by the amended state law or federal law.

27. **AMENDMENT**. This agreement cannot be modified, nor are any of its provisions waived, except by a written agreement signed by an authorized representative of the parties.

28. **SEVERABILITY**. If any provision of this agreement or any other lease document is held to conflict with any statute, law, or applicable rule, that provision shall be deemed omitted, modified, or altered to conform thereto.

29. **COUNTERPARTS**. This Agreement and any other lease document may be executed in any number of counterparts, each of which shall be considered an original.

30. **TIME OF THE ESSENCE**. Time is of the essence for the performance of all obligations set forth in this Agreement.

31. **NOTICE TO THE LESSEE**. (a) do not sign this contract before you read it or if it contains any blank spaces, and (b) you are entitled to an exact copy of the contract you signed. Keep a copy to protect your legal rights.

The Rest of This Page is Blank

Lessee's Initial [ Initial: JG ]   Owner's Initial [ Initial: kl ]

**IN WITNESS WHEREOF**, the Lessee and the Lessor have caused this Agreement to be executed by their duly authorized representatives effective as of the date first above written.

| LESSEE'S NAME | Plant Great Seeds LLC |
|---|---|
| **Lessee Authorized Representative** | Julie Galli |
| **Signature** | *Julie Galli* (Signed by: 375778828B9B4F8) |
| **Date Signed** | 8/8/2024 |

| LESSOR'S NAME | Southern Truck Leasing LLC |
|---|---|
| **Lessor Authorized Representative** | Kris Lunsford |
| **Signature** | *kristopher lunsford* (Signed by: 669FFD039BE640D) |
| **Date Signed** | 8/21/2024 |

Lessee's Initial *JG* (Initial)   Owner's Initial *kl* (Initial)