UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MGM ELITE TRUCKING LLC, a      CASE NO.:  8:25-cv-01507-TPB-NHA
Florida company,

         Plaintiff(s),

vs.

AKL TRANSPORT LLC, a Georgia
company, SOUTHERN TRUCK
LEASING LLC, a Georgia company,
and KRISTOPHER A. LUNSFORD,

         Defendant(s).

_____/

## <u>DEFENDANTS' JOINT MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, WITH INCORPORATED MEMORANDUM OF LAW</u>

Defendants, Kristopher A. Lunsford (**"Mr. Lunsford"**), AKL Transport LLC (**"AKL"**) and Southern Truck Leasing LLC (**"Southern"**), respectfully move to dismiss the Complaint in its entirety, with prejudice, under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, because the Complaint fails to state a claim on which relief may be granted and fails to plead "fraud" with the requisite particularity. The grounds for this motion are further explained below.

## I.    INTRODUCTION

The claims here involve a "business model" under which Plaintiff MGM Elite Trucking LLC (**"MGM"**) allegedly solicited others to contract with two entities—Defendant AKL and Defendant Southern. According to the Complaint, MGM would recruit a client to purchase from Southern a lease interest in a commercial semi-truck, after which AKL would operate the truck on the client's behalf and make a weekly payment to the client out of the revenues earned from the truck's operations.

MGM's role in this alleged arrangement was solely that of "middleman." MGM would recruit the client and then serve as "pass-through administrator" of the moneys that flowed between the client and the Defendant companies.

Nevertheless, when the entity Defendants allegedly ceased making payments to the clients, MGM filed this action, suing not only the entity Defendants but an individual principal, Mr. Lunsford. The Complaint fails to allege any cause of action at all.

Although the Complaint purports to allege fraud (Count I) and that MGM has unjustly enriched Defendants (Count II), the allegations show that MGM incurred no harm from the arrangement; in fact, MGM profited. The clients that MGM recruited—who would be the "victims," if the alleged wrongdoing had really occurred—are not parties here. And because these substantive claims fail as a matter

of law, MGM's claim for the equitable remedy of an accounting (Count III) likewise fails. Finally, MGM's request for an order requiring Defendants to indemnify MGM in unspecified, contingent claims by MGM's clients (Count IV) is premature and seeks an impermissible advisory opinion.

## II.    BACKGROUND[1]

The Complaint describes a "business model" allegedly created by Mr. Lunsford. (Complaint, ¶ 8 (Dkt. 1, p. 2)). According to the allegations, Plaintiff MGM became a "recruiter" (soliciting clients for the business) and a "pass-through administrator" (through which payments were processed, with MGM taking a share as "residuals"). (*Id.*, ¶¶ 27, 32-33 (Dkt. 1, pp. 5-6)). MGM alleges that, unbeknownst to it, the business model was operated fraudulently.

### A. The Alleged "Business Model"

As alleged, the business model involved buying commercial "semi-trucks" at a discount and then selling to others the right to lease a truck (with an option to buy) and to receive revenues from the truck's operations, which the Defendants would

---

[1] This motion assumes the well pleaded allegations in the Complaint are true (but only to the extent they are well pleaded and only for argument's sake). Defendants do not admit that any allegation in the Complaint is actually true, and certainly not for any purpose other than this motion.

manage. (Complaint, ¶¶ 8, 11 (Dkt. 1, pp. 2-3)).[2] The Complaint asserts that Mr. Lunsford and his two companies (AKL and Southern) would operate the trucks—including maintaining them, dispatching them, and coordinating loads and drivers to generate weekly revenues—and the persons who purchased lease interests (called "clients" or "Participants") would receive each week a part of those revenues. (*Id.*; ¶¶ 8, 11, 33 (Dkt. 1, pp. 2-3, 6)).

### B. Plaintiff's Involvement in the Business Model

The Complaint alleges that Plaintiff MGM became a "recruiter and pass-through administrator" for AKL and Southern. (*Id.*, ¶¶ 27, 32 (Dkt. 1, pp. 5-6)). MGM was specifically formed for this purpose by its three principals, Sarah Moshier, Julie Galli, and Sharon Minard. (*Id.*, ¶¶ 12, 19, 24-27, 32 (Dkt. 1, pp. 3-6)).

According to the Complaint, MGM would "act as a middleman between a 'Participant' [*i.e.*, a client] and . . . Southern and AKL." (*Id.*, ¶ 33 (Dkt. 1, p. 6)). MGM's roles were to (i) recruit and sign up new clients, and (ii) process weekly payments, including acting as a pass-through for those payments. (*Id.*, ¶ 27, 32-33, 52, 75 (Dkt. 1, pp. 5-6, 9, 12)).

---

[2] According to the Complaint, these prospects were required to form limited liability companies (LLCs), which would enter into the contracts with AKL and Southern. (Complaint, ¶ 11 (Dkt. 1, p. 3)).

These roles involved MGM receiving money and taking a share of those moneys that it received. On the front end, "MGM would accept a 'Participant's Participation Fee' for a truck lease with Southern," (*id.*, ¶ 33 (Dkt., 1 p. 6)), and MGM was allowed to mark up this fee to make money for itself (*id.*, ¶ 27 (Dkt. 1, p. 5); *see also id.*, ¶ 41 (Dkt. 1, pp. 7-8)). "On the back [end,] MGM would receive payment from AKL of funds generated by the truck, pay the lease payment due to Southern, and pay net income to the Participant" (*id.*, ¶ 33 (Dkt. 1, p. 6)), with MGM earning a "residual" from the weekly payments (*id.*, ¶ 27 (Dkt. 1, p. 6)).[3]

### C. Plaintiff's Attempted Claims

The Complaint asserts that earlier this year, the Defendants began missing payments and eventually ceased making payments altogether, causing MGM to allege that the revenues Defendants were receiving were not sufficient to cover the weekly payments due to Participants. (*Id.*, ¶ 62 (Dkt.1, p. 11)). "On information and belief" the Complaint avers that Defendants used funds from later Participants to pay the weekly payments owed to earlier Participants. (*Id.*, ¶ 63 (Dkt. 1, p. 11)). And the Complaint asserts that Defendants did not purchase as many trucks as they

---

[3] As additional compensation, MGM's principals, Moshier, Galli, and Minard, were offered the right to purchase lease interests in trucks for themselves at a discounted price. (Complaint, ¶ 27 (Dkt. 1, p. 6)).

claimed, and were assigning the same trucks (*i.e.*, the same Vehicle Identification Numbers, or "VINs"), to multiple participants. (*Id.*, ¶¶ 60-64 (Dkt. 1, p. 11)).

The purported harm from these alleged acts accrues solely to the Participants—not MGM.[4] The Complaint alleges merely the cessation of pass-through funds that were intended ultimately for the Participants and Defendant Southern. (*Id.*, ¶ 75 (Dkt. 1, p. 12)). And it alleges "potential" lawsuits against MGM from Participants that MGM recruited. (*Id.*, ¶ 74 (Dkt. 1, p. 12)).

Nevertheless, based on these allegations, MGM attempts to state a claim for fraud (*id.*, ¶¶ 82-89 (Dkt. 1, pp. 13-15)), unjust enrichment (*id.*, ¶¶ 90-97 (Dkt. 1, pp. 15-16), an accounting (*id.*, ¶¶ 98-103 (Dkt. 1, p. 16), and indemnification (*id.*, ¶¶ 104-11 (Dkt. 1, pp. 16-17)).

## III.    ARGUMENT

When the allegations in a complaint fail on their face to state a claim for relief, such purported claim should be dismissed. *See* Fed. R. Civ. P. 12(b)(6). Surviving this test "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[4] The Complaint includes a conclusory allegation that MGM was harmed financially itself (Compl. ¶ 89 (Dkt. 1, p. 15), but it nowhere explains plausibly how this is so. Additionally, while the Plaintiff alleges reputational harm (in conclusory terms) to MGM's principals (*see id.*), the principals are not parties here.

544, 555 (2007). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (brackets omitted); *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008). "Stated a different way, after ignoring conclusory allegations, the court assumes any remaining factual allegations are true and determines whether those factual allegations plausibly give rise to an entitlement to relief." *Corbin v. Prummell*, 655 F. Supp. 3d 1143, 1153 (M.D. Fla. 2023) (citing *Ingram v. Kubik*, 30 F.4th 1241, 1255 (2022)). MGM's purported claims in this action all fail the test.

### A. MGM's purported fraud claim (Count I) fails because the allegations fail to show any detrimental reliance of damages to MGM.

"When fraud is asserted as a claim or defense, the facts and circumstances constituting the fraud must be pled with specificity . . . and all essential elements of fraudulent conduct must be stated, *i.e.*, that plaintiff relied to his detriment on a false statement concerning a material fact made with knowledge of its falsity and an intent to induce reliance." *Peninsular Florida Dist. Council of Assemblies of God v. Pan Am. Inv. & Dev. Corp.*, 450 So. 2d 1231, 1232 (Fla. 4th DCA 1984); *see also* Fed. R. Civ. P. 9(b). Furthermore, the essential elements that a plaintiff must allege include actual damages. *See Morgan Stanley & Co. Inc. v. Coleman (Parent) Holdings Inc.*, 955 So. 2d 1124, 1132 (Fla. 4th DCA 2007) ("It is fundamental that

actual damages and the measure thereof are essential as a matter of law in establishing a claim of fraud." (internal quotation marks and brackets and citation omitted)); *accord Newkirk v. United Fed. Sav. & Loan Ass'n*, 299 S.E.2d 183, 184 (Ga. Ct. App. 1983) ("An essential element of actionable fraud of any kind is damage."). This is because "[d]amage is of the very essence of an action for fraud or deceit." *Morgan Stanley & Co. Inc.*, 955 So. 2d at 1132 (brackets supplied, quotations marks and citation omitted)). But here, the Complaint shows that Plaintiff MGM has not relied to its detriment on any alleged false statement and has sustained no actual harm from any such statement. So, the attempted fraud claim should be dismissed.

Other than conclusory assertions of unspecified "financial harm" to MGM (*see*, *e.g.*, Complaint, ¶ 89 (Dkt. 1, p. 15)), the allegations here concern injury solely to Participants, not to MGM. The only injury specified in any well pleaded factual allegation concerns the drying up of weekly payments from the Defendant companies (*id.*, ¶ 75 (Dkt. 1, p. 12)), and repeatedly, the Complaint emphasizes that MGM served merely as a "pass-through administrator" or "middleman" for those payments (*see id.*, ¶ 27, 32-33, 52, 75 (Dkt. 1, pp. 5-6, 9, 12)). The money was ultimately intended (on MGM's theory) to "pass through" to Participants. (*Id.*, ¶ 33

(Dkt. 1, p. 6)). It follows that MGM never relied to its detriment and any failure to provide the payments caused harm only to the Participants.

Indeed, MGM's allegations of a scheme to defraud Participants make MGM a beneficiary, not a victim. As MGM admits, it took payments up front out of Participants' initial fees, as well as subsequent "residuals." (*Id.*, ¶¶ 27, 33, 41 (Dkt. 1, pp. 5, 6, 7-8). Thus, far from alleging harm caused by the supposed scheme, MGM's allegations show it profiting, and, consequently, MGM has failed to plead a fraud claim. *See Cosby v. First Tennessee Bank Nat. Ass'n, Inc.*, 545 Fed. Appx. 796, 798 (11th Cir. 2013) ("Factual allegations must be enough to raise a right to relief above the speculative level." (punctuation and citation omitted)).

### B. MGM's purported unjust enrichment claim (Count II) fails because the Complaint shows no enrichment at MGM's expense.

A "claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021) (internal punctuation and citation omitted); *accord Sampson v. Haywire Ventures, Inc.*, 668 S.E.2d 286, 288 (Ga. Ct. App. 2008). This means that, "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." *Id*. (punctuation and citation

omitted). The Complaint here alleges no such conferral of any benefit by MGM to any of the Defendants.

As shown above, the only financial harm alleged in the Complaint was incurred by the Participants, not MGM. MGM was a "pass-through" administrator and actually received compensation from the Participants. (Complaint, ¶¶ 27, 32-33, 41, 52, 75 (Dkt. 1, pp. 5-6, 8, 9, 12). So, the Complaint does not allege any unjust enrichment of any Defendant at MGM's expense, and the unjust enrichment claim fails as a matter of law.

### C. MGM has failed to allege any grounds for an equitable accounting (Count III).

"A claim for equitable accounting should be dismissed where the evidentiary facts alleged in a complaint show neither complexity nor inadequacy of a legal remedy." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1280 (S.D. Fla. 2010). Even more, an accounting is impermissible where, as here, there are no viable substantive claims at all. Where a plaintiff fails to show any entitlement to any remedy, it certainly cannot show inadequacy of any legal remedy. *See GlobalOptions Services, Inc. v. N. Am. Training Group, Inc.*, 131 F. Supp. 3d 1291, 1302 (M.D. Fla. 2015) ("[I]t is well-established that injunctive relief is not a proper claim for relief in and of itself, but rather a remedy that is available upon a

finding of liability on a claim."). So, the failure of MGM's other claims means that its "equitable accounting" claim necessarily fails as well.

### D. MGM's purported claim for indemnification fails because it seeks an impermissible advisory opinion (Count IV).

Finally, MGM's demand that Defendants be ordered to indemnify MGM—against unspecified claims on unspecified grounds—seeks, in effect, an impermissible advisory opinion. *See Bruckner v. Biden*, 666 F. Supp. 3d 1237, 1243–44 (M.D. Fla. 2023) ("Article III, § 2 vests federal courts with the power to decide 'Cases' and 'Controversies,' not 'questions and issues.'"); *see also Interlachen Lakes Estates, Inc. v. Brooks*, 341 So. 2d 993, 995 (Fla. 1976) ("This Court may render advisory opinions only to the Governor."); *Sons of Confederate Veterans v. Henry Cnty. Bd. of Commissioners*, 315 Ga. 39, 51, 880 S.E.2d 168, 178 (2022) ("The rule that an actual controversy must exist in order to sue also appears in our considerable body of precedent holding that courts lack the power to issue advisory opinions."). Thus, this count, like the others, fails to state a claim.

The Complaint does not specify any present claim or action for which MGM seeks indemnification. (*See* Complaint ¶¶ 109-111 (Dkt. 1, p. 17)). It also does not specify any agreement to indemnify or any other legal theory on which indemnification might be required. (*See id*.). The claim is therefore speculative and premature. *See Great N. Paper Co. v. Babcock & Wilcox Co.*, 46 F.R.D. 67, 70 (N.D.

Ga. 1968) ("The court should not pass on questions of insurance coverage and liability for indemnification when the contingencies giving rise to them may never occur. To do so would amount to an advisory opinion, which this court cannot give.").

## IV.    CONCLUSION

For the reasons stated above, Defendants, Kristopher Lunsford, AKL Transport LLC, and Southern Truck Leasing LLC respectfully request that the Court grant their motion to dismiss for failure to state a claim, dismiss all claims against them in this action with prejudice, and grant all other, additional relief that the Court sees fit.

Respectfully submitted on September 4, 2025:,

/s/Courtney M. King
COURTNEY M. KING, ESQ.
Florida Bar No. 0069389

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on September 4, 2025, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or

parties who are not authorized to receive Notices of Electronic Filing:

John Thornton, Esq., Orlando do Campo, Esq., do Campo & Thornton, P.A., 150 S. E. 2nd Avenue, Suite 602, Miami, FL 33131; jt@dandtlaw.com (*Attorney for Plaintiff*)

/s/Courtney M. King
COURTNEY M. KING, ESQ.
Florida Bar No. 0069389
GINAN A. JOBARAH, ESQ.
Florida Bar No. 1020802
**MCDONALD TOOLE RICHMAN & CORRENTI, P.A.**
111 N. Magnolia Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 246-1800
MGMvAKL@mtrclegal.com
cking@mtrclegal.com
gjobarah@mtrclegal.com
*Attorneys for AKL TRANSPORT LLC,*
*SOUTHERN TRUCK LEASING LLC and*
*KRISTOPHER A. LUNSFORD*